# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MAURICE MITCHELL INNOVATIONS, L.P., | § § § | |
| **Plaintiff** | § § | CASE NO. 2:04-CV-450 |
| vs. | § § | |
| INTEL CORPORATION, | § § | |
| **Defendant** | § | |

## ORDER DENYING INTEL'S MOTION TO TRANSFER

Before the Court is Defendant Intel Corporation's ("Defendant" or "Intel") Motion to Transfer Venue to the Northern District of California (Docket No. 9). For the reasons set forth below, the Court **DENIES** the motion.


## BACKGROUND

Plaintiff Maurice Mitchell Innovations, L.P. ("Plaintiff" or "Mitchell") accuses Intel of infringing U.S. Patent No. 4,875,154 ("the '154 patent"). The '154 patent claims a microcomputer data processing apparatus comprised of a central processing unit chip and additional circuitry to allow the central processing unit to interact with other microcomputers. Because of Mitchell's litigation history, Intel contends this case should be transferred to Judge Susan Illston in the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

The '154 patent has been involved in at least four previous litigations in the Northern District of California. In February 1999, Mitchell sued Hitachi in the District of Maryland for infringing the

1

'154 patent, but in April 1999, that case was transferred, at Mitchell's request, to the Northern

District of California. In June 2000, Mitchell sued Samsung in the Northern District of California

for infringing the '154 patent. In September 2000, Mitchell sued NEC in the Northern District of

California for infringing that same patent. Finally, in May 2001, Mitchell sued Fujitsu for

infringement. In January 2002, Judge Illston issued her construction of Claim 1 of the '154 patent

in the Samsung case. Shortly after Judge Illston issued the claim construction, Mitchell settled with

Samsung. In November 2004, Mitchell incorporated in Texas and one month later, initiated the

present suit against Intel.

## ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a). The first determination to be made under 28 U.S.C. § 1404(a) is whether the

claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG*,

371 F.3d 201, 203 (5th Cir. 2004). If so, under section 1404(a), a court examines "the convenience

of the parties and witnesses." *Id.* When examining convenience, the district court balances the

private interests of the litigants and the public interests of fair and efficient administration of justice.

*Id.* To transfer a case, a district court must find that the balance of the private and public interests

substantially favor transfer. *See LeDoux v. Isle of Capri Casinos Inc.*, 218 F. Supp. 2d 835, 837

(E.D. Tex. 2002)(Cobb, J.).

The private factors include: (1) the convenience and location of the parties and material

witnesses, (2) the cost of obtaining the attendance of witnesses and availability of compulsory

process, (3) the place of the alleged wrong, (4) the accessibility and location of sources of proof, and (5) the possibility of delay and prejudice if transfer is granted. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000)(Heartfield, J.). The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id.* Though all factors are considered to the extent they are applicable, none are given dispositive weight. *See Volkswagen,* 371 F.3d at 203. A court should also consider the plaintiff's forum choice, but the plaintiff's forum choice by itself is not conclusive or determinative. *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir. 2003); *Z-TEL Communications, Inc. v. SBC Communications, Inc.,* 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004) (Folsom, J.).

Because the parties do not dispute – and the Court agrees – that this action could have been brought in the Northern District of California, the Court now turns to the convenience determination. The private and public factors each will be discussed in turn below.

## A. *Private Interest Factors*

The first factor considers the convenience of the parties and witnesses. Though Intel is based in the Northern District of California, it also has research and manufacturing operations – potentially relevant to the accused infringement – in Arizona, Massachusetts, Oregon, Texas, and across Asia, Central America, and Europe. Trying a case in Marshall hardly inconveniences a global corporation with such widespread domestic and international operations. Indeed, the only person who may be inconvenienced by traveling to Marshall is Mr. Maurice Mitchell, an octogenarian residing in

3

California. However, inconvenience to a plaintiff "is not a consideration" when analyzing a defendant's motion to transfer since the plaintiff chose the forum and presumably considered convenience and cost. *Cummins-Allison Corp., v. Glory Ltd.,* 2004 WL 1635534 at *5 (E.D. Tex. 2004)(Ward, J.)(citing 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3849 (West 1986)). The Court thus concludes this factor does not favor transfer.

The second factor considers the cost of obtaining the attendance of witnesses and availability of compulsory process. In weighing this factor, "the convenience of non-party witnesses, rather than of employee witnesses . . . is the more important factor and accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D. Tex.1994). No third party witnesses that would be inconvenienced by testifying in Marshall have been identified. While the Northern District of California is more convenient for Intel's Silicon Valley-based personnel, witnesses will likely come from Intel facilities across the nation and world. For those witnesses, flying to eastern Texas to testify is no more difficult than flying to northern California. Thus, the second factor does not favor transfer.

The third factor involves the place of the alleged wrong. In a patent case involving the nationwide sale of allegedly infringing goods, a patent-owner may bring its action in any forum where the alleged infringement occurred. *See Beam Laser Sys., Inc. v. Cox Communications, Inc.,* 117 F. Supp. 2d 515, 518-519 (E.D. Va.2000). Because the allegedly infringing goods were sold in the Eastern District of Texas, the third factor does not favor transfer.

The fourth factor involves the accessibility and location of sources of proof. Given that patent cases like this involve battles of documents and technical experts scattered across the nation, this factor is immaterial and thus does not favor transfer.

4

The fifth factor considers the possibility of delay or prejudice if transfer is granted or denied. Intel contends that the Northern District of California's familiarity with the technology at issue and Judge Illston's familiarity with the '154 patent will allow for a quicker resolution of the case. However, the Court is quite experienced in patent matters and can refer to Judge Illston's *Markman* ruling, so there is little likelihood of delay in denying transfer. Indeed, the Eastern District of Texas is often able to bring patent cases to trial within eighteen months of filing. This speed is one of the reasons Mitchell chose to litigate here. The fifth factor does not favor transfer.

### B. *Public Interest Factors*

The first public factor is similar to the fifth private factor discussed above and considers the administrative difficulties in granting or denying transfer. Intel argues that because Judge Illston has already issued a *Markman* ruling on the '154 patent, this case should be transferred to capitalize on her familiarity with the patent and to avoid issuing an inconsistent claim construction.

The Court has previously addressed judicial economy in patent cases and the serious problem caused by inconsistent constructions of the same claims by different courts. *See, e.g., ConnecTel LLC v. Cisco Sys., Inc.,* Docket No. 2:04-cv-396 (E.D. Tex. 2005)(Davis, J.); *Logan v. Hormel Foods Corp., et al.,* Docket No. 6:04-cv-211 (E.D. Tex. 2004)(Davis, J.); *MyMail, Ltd. v. America Online, Inc.,* 223 F.R.D. 455 (E.D. Tex. 2004)(Davis, J.). In *Logan,* the Court granted the motion to transfer, but denied motions to transfer in *ConnecTel* and *MyMail.* In reaching all three decisions, the Court analyzed potential gains in judicial economy and problems of inconsistent claim in the context of the case as a whole.

Of those three cases, the present case is most similar to *ConnecTel.* Despite the Eastern

District of Pennsylvania previously construing terms in U.S. Patent No. 6,016,307, the Court concluded – when viewing the case on the whole – that few gains in judicial economy would be realized by transferring the case and the risk of an inconsistent claim construction was minimal since the Court could refer to the Eastern District of Pennsylvania's rulings. Likewise, in the present case, few gains would be realized by transferring the case back to California and there is little risk of issuing an inconsistent claim construction since the Court will refer to Judge Illston's rulings, when possible. Although *ConnecTel* involved additional claims, the Court still concludes here – as it did in *ConnecTel* – that the judicial economy and inconsistent claim construction problems articulated in *Logan* and *MyMail* are still not present.

In *Logan*, the plaintiff alleged infringement of several claims of U.S. Patent Re. 35,374 in the Eastern District of Texas after previously alleging infringement of many of the same claims in the Southern District of Texas. *See Logan v. HoneyBaked L.P.,* Docket No. H-01-1611 (S.D. Tex. Apr. 5, 2004)(Werlein, J.). The Southern District case settled shortly after Judge Ewing Werlein, Jr. issued an exhaustive claim construction opinion. Upon motion by the defendant in the Eastern District case, the Court transferred the case to Judge Werlein since he had previously construed many of the claims at issue. The Court concluded that transfer was in the interest of judicial economy because Judge Werlein would be able to draw on his familiarity with the patent – particularly its eleven years of prosecution history – when issuing, if necessary, a new claim construction and seeing the case to final resolution. Although the Court noted in *Logan* that the plaintiff might have been bringing suit in the Eastern District in an attempt to obtain a more favorable claim construction ruling – an assertion Intel raises here – the Court's decision in *Logan* turned largely on that patent's incredible prosecution history. Such unusual complexity is simply not present here. The Court is able to understand the

6

technology underlying the '154 patent and may, if possible, adopt much of Judge Illston's *Markman* opinion to avoid redundant efforts and inconsistent claim constructions. Thus, the Court concludes that when viewing this case on the whole, the concerns motivating transfer in *Logan* do not weigh in favor of transfer in the present case.

The concerns of judicial economy and inconsistent claim constructions articulated in *MyMail* are also not present here. *MyMail* involved a motion to sever and then transfer part of the patent suit. The Court denied both motions because it did not want to create two ongoing cases involving the same patent in different districts. Two ongoing cases would require a duplication of judicial resources, particularly during the discovery and claim construction phases, and could ultimately lead to different adjudications of the same patent. Such concerns do not apply here, since the case in which Judge Illston issued the *Markman* opinion has already settled. Both the Northern District of California and the Eastern District of Texas will be required to expend resources to adjudicate the present dispute, and both courts can refer to previous rulings in cases involving the '154 patent to conserve resources and to the extent necessary, issue consistent claim constructions. Thus, for these reason and the reasons discussed above, when viewing this case on the whole, the Court concludes that the very legitimate concerns of judicial economy or inconsistent claim constructions do not raise the severe administrative difficulties that favor transfer.

The second factor considers the local interest in resolving local controversies. While Mr. Mitchell lives in California and Intel has no research or manufacturing operations near Marshall, the alleged infringing goods were sold in the Eastern District of Texas and across the rest of the nation. "The residents of the Eastern District of Texas . . . have a significant interest in the enforcement of federal patent laws against infringement activities occurring within the division." *Cummins-Allison,*

2004 WL 1635534 at *5. Therefore, this factor does not favor transfer.

The third and fourth factors involve the forum's familiarity with the governing laws and the avoidance of unnecessary conflict of law problems involving foreign law's application. This action is brought under the federal patent laws, and the interpretation of those laws is governed by the law of the Federal Circuit in both this forum and in the Northern District of California. Thus, these factors do not weigh in favor of transfer since all federal courts are equally able to apply the same federal laws.

## CONCLUSION

Because the Court concludes that most factors are neutral or do not favor transfer, Mitchell's choice of the Eastern District of Texas as the forum for this litigation will not be disturbed. The motion to transfer is therefore **DENIED**.

**So ORDERED and SIGNED this 30th day of March, 2005.**



**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**