IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AMBERWAVE SYSTEMS CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTEL CORPORATION, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 2-05CV-321 <br><br> JUDGE DAVIS <br> JURY |

## SUPPLEMENTAL DECLARATION OF MICHAEL E. JONES
## IN SUPPORT OF MOTION TO TRANSFER

I, Michael E. Jones, declare and state as follows:

1. I submit this Supplemental Declaration in further support of the Motion to Transfer filed on behalf of Defendant Intel Corporation ("Intel"). I base this declaration on my personal knowledge and, if called as a witness, I would testify to the matters set forth herein.

2. I am a Shareholder at Potter Minton, PC counsel for Intel in the above civil action.

3. Attached hereto as Exhibit A is a true and correct copy of a transcript of the scheduling conference held on September 7, 2005 in *Intel Corporation v. AmberWave Systems Corporation*; No. 05-301 (KAJ) (D. Del.) (hereinafter "the Delaware Action"), which was furnished to me by counsel for Intel in the Delaware Action.

4. Intel has begun producing documents to AmberWave in the Delaware Action, and both parties in the Delaware Action will exchange Rule 26(a) disclosures no later than September 29, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of September, 2005.

_____
Michael E. Jones

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this 26th day of September, 2005.



AMANDA TEKELL
MY COMMISSION EXPIRES
June 9, 2006

_____
Notary Public, State of Texas

{A12\7395\0002\W0292330.1 }

# EXHIBIT A

SHEET 1

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                         - - -

 4    INTEL CORPORATION,            :  CIVIL ACTION
                                    :
 5          Plaintiff and           :
            Counter-defendant,      :
 6                                  :
      v.                            :
 7                                  :
      AMBERWAVE SYSTEMS CORPORATION,:
 8                                  :
            Defendant and           :
 9          Counter-claimant.       :  NO. 05-301 (KAJ)
                         - - -
10
                       Wilmington, Delaware
11            Wednesday, September 7, 2005 at 4:05 p.m.
                       TELEPHONE CONFERENCE
12
                              - - -
13
      BEFORE:   HONORABLE KENT A. JORDAN, U.S.D.C.J.
14
                              - - -
15    APPEARANCES:

16
              YOUNG CONAWAY STARGATT & TAYLOR
17            BY: JOSY W. INGERSOLL, ESQ.

18                   and

19            SIMPSON THACHER & BARTLETT, LLP
              BY: GEORGE M. NEWCOMBE, ESQ., and
20                PATRICK E. KING, ESQ.
                  (Palo Alto, California)
21
                         Counsel for Intel Corporation
22

23

24
                                      Brian P. Gaffigan
25                                    Registered Merit Reporter
```

Wednesday, September 7, 2005

SHEET 2

2

1  APPEARANCES: (Continued)
2
3        MORRIS NICHOLS ARSHT & TUNNELL
         BY: JACK B. BLUMENFELD, ESQ.
4
         and
5
         IRELL & MANELLA, LLP
6        BY: JASON SHEASBY, ESQ.
             (Los Angeles, California)
7
         and
8
         AMBERWAVE SYSTEMS CORPORATION
9        BY: BRYAN LORD, ESQ.

10              Counsel for AmberWave Systems
                Corporation
11
12
13
14
15                      - oOo -
16              P R O C E E D I N G S
17       (REPORTER'S NOTE: The following telephone
18  conference was held in chambers, beginning at 4:05 p.m.)
19       THE COURT: Hi, this is Judge Jordan. Who do I
20  have on the line?
21       MS. INGERSOLL: Hi, Judge Jordan. Josy
22  Ingersoll on the line for Intel; and with me are George
23  Newcombe -- or I think George is the only one with me. He
24  is a partner with Simpson Thacher & Bartlett, and you may
25  remember him from long ago.

3

1       THE COURT: I do recall.
2       MR. KING: Patrick King is also on, Your Honor.
3       THE COURT: All right. Thanks. And for the
4  defense?
5       MR. BLUMENFELD: Good afternoon, Your Honor.
6  Jack Blumenfeld for AmberWave, along with Jason Sheasby from
7  Irell & Manella, and Bryan Lord who is the General Counsel
8  for AmberWave is also on the line.
9       THE COURT: All right. I apologize for keeping
10  folks waiting. I was disengaging from another call and it
11  took a moment or two longer to do that than I had
12  anticipated.
13       I have the letter that Mr. Blumenfeld sent over
14  yesterday with the proposed form of order and assume that
15  you folks have that in front of you and we'll run through
16  this together.
17       And I note at the get-go as to paragraph 1, we
18  have a dispute about the e-discovery standard with Intel
19  saying they would rather not and AmberWave saying they would
20  rather. So who wants to speak to this from the Intel side?
21       MR. NEWCOMBE: Your Honor, this is George
22  Newcombe. I'll address that.
23       We have two concerns. And it may be that these
24  can be addressed and we can move past this, but one is the
25  rules are particularly burdensome, the first part of the

4

1  rules for a company as large and diverse and geographically
2  as Intel is. So that's a concern that we have. And there
3  may be a way to mutually agree to narrow this in a way that
4  is manageable.
5       The other concern we have is that there is a
6  very similar action pending in Texas where AmberWave has
7  sued Intel at the time that they answered the complaint in
8  Your Honor's court. Last Friday, we had moved to transfer
9  that action to Delaware. If that motion is granted, this
10  concern, which is being whipsawed between two different sets
11  of rules, goes away. Or if the Court in Texas were to agree
12  and the parties were to agree the same rules would apply in
13  Texas, at least we would be operating under consistent rules
14  in both cases because the subject matter is so similar, the
15  documents will overlap and we don't want to be whipsawed
16  between two different sets of standards.
17       THE COURT: All right. Mr. Blumenfeld or
18  Mr. Sheasby, who is going to be speaking to this on the
19  defense side?
20       MR. BLUMENFELD: This is Jack Blumenfeld. I
21  will. I mean, first of all, Your Honor, this is the first
22  we've heard as to it not applying. I guess we're happy to
23  discuss the first issue, which is the burden or purported
24  burden on Intel. I understand it's a huge multinational
25  company, but there ought to be ways to deal with that by

5

1  focusing on the areas of technology that are at issue here.
2  The fact that they have hundreds of thousands of employees I
3  don't think means that they shouldn't have to do electronic
4  searches that are appropriate under the rules.
5       But as I said, we're willing to discuss that.
6  It just hasn't been discussed. It seems to us that the
7  standard of this court ought to apply by default unless we
8  reach some different agreement.
9       I don't really understand the Texas action
10  issue.
11       THE COURT: Well, let me tell you what I under-
12  stand. I understand them to be saying you guys went to
13  court after they had already sued you here. You guys
14  decided to go to another court and sue them and they're
15  worried about two different discovery standards being
16  applied. And that seems to me a pretty straightforward
17  and reasonable concern to have.
18       MR. BLUMENFELD: Right. But I don't know why
19  we can't have the same discovery standard to apply. Mr.
20  Newcombe is right. Either it's going to be transferred to
21  this court, in which case we won't have an issue, or it's
22  not going to be transferred, in which case I don't
23  understand why we can't have the same discovery standard.
24       THE COURT: How about because there is a judge
25  in Texas who might not choose to follow the standard we have

Wednesday, September 7, 2005

SHEET 3

**Page 6**

1  here? I mean when you say you don't understand, I'm getting
2  it. You guys have created now a conflict that probably
3  shouldn't have existed by suing the same party in another
4  district. Now, maybe you got a good reason for that and
5  it's just not something I'm aware of but it certainly does,
6  on the face of it, create the potential for conflicting
7  discovery rules and schedules and that is a problem. That
8  is a real problem.
9      MR. BLUMENFELD: Well, my point, Your Honor, was
10 that if they're going to have to adhere to the default
11 standard of this court and search for documents in that way,
12 presumably they can search for documents in that way in both
13 cases whether or not that standard formally applies.
14     THE COURT: Well, here is what we're going to do
15 to handle it. I'm going to expect the parties to discuss
16 this in good faith, leaving aside the Texas vs. Delaware
17 issue in the first instance. Treat this as if it were a
18 matter strictly pending here and come up with a resolution
19 for how to handle it.
20     Until that is done, by definition, you're under
21 the default standard because that is what it is. If you
22 can't agree by default, you are under this standard until
23 the parties either agree otherwise or they persuade me that
24 something different is required, and that could well be the
25 case. I'm not at all unsympathetic to the pitch that Mr.

**Page 7**

1  Newcombe has made for Intel. If you guys can't agree to
2  something that seems more reasonable under the circum-
3  stances, I'll hear the parties on what would be more
4  reasonable under the circumstances. But we won't have no
5  standard in place, okay?
6      So you can word this something along these
7  lines: "Until further Order of the Court anticipated after
8  discussions by the parties, the default standard will
9  apply." Because we're not going to have the case
10 standardless moving forward; okay?
11     MS. INGERSOLL: Yes, Your Honor.
12     THE COURT: All right. And let me just state,
13 before I leave this subject entirely, if you folks can't
14 agree, and if there is a suit that going on on roughly a
15 parallel track down in Texas, that is factor I'll consider
16 in whether or not this default standard should stay in
17 place.
18     All right. Paragraph 2 for joinder of other
19 parties and amendment of pleadings. The October 7th date
20 for joinder motion is fine.
21     The supplemental pleading or amendment of
22 pleading date will be April 17, 2006. We'll just put that
23 date in specifically. All right?
24     Now, on discovery, limitation on hours of
25 deposition discovery, again we have a dispute. I gave the

**Page 8**

1  ball to Intel first last time so, AmberWave, I'll give it to
2  you first on this.
3      MR. BLUMENFELD: Your Honor, you know, we
4  had this conversation before and it's sometimes hard to
5  anticipate how much are you going to need, but I don't think
6  this is a simple case particularly because there are a
7  lot of defenses asserted, including inventorship, double
8  patenting and a lot of nontechnical defenses: laches,
9  waiver estoppel, unclean hands and a bunch of things. It's
10 just one of those cases where 100 hours may not be enough.
11 We originally proposed 175, we came down to 125, and we're
12 not going to abuse our hours. If we don't need to use them
13 we won't use them, but I'd hate to have to come back because
14 we have a dispute over whether we can take those last three
15 depositions and I think 125 in a case like this is
16 reasonable.
17     THE COURT: Mr. Newcombe?
18     MR. NEWCOMBE: Your Honor, it's always hard to
19 predict so it's not as if this is a mathematical exercise.
20 It seemed to us that 100 hours was more than sufficient here
21 under the circumstances given this is a one patent case, but
22 it's a matter of judgment. We can't predict what it will
23 be. We think 100 hours is adequate.
24     THE COURT: All right. Well, I guess I'll err
25 on the side of generosity here and we'll go ahead and mark

**Page 9**

1  this down for 125 on the representation which I know is made
2  in good faith by Mr. Blumenfeld, and I accept it as such,
3  that if it doesn't take that much, they won't use that much.
4      So we'll move to location of depositions next.
5  Now, I have standard language that is in my orders and
6  typically, and it looks like Intel, you folks want to move
7  off that. Do you want to tell me why?
8      MR. NEWCOMBE: Well, we know that it depends
9  on how broadly the party representative is defined, but
10 certainly all of our people reside in California and it
11 would be more convenient for them certainly to be closer to
12 their residence than otherwise this is.
13     THE COURT: AmberWave?
14     MR. BLUMENFELD: Your Honor, this is one where I
15 think on an ad hoc basis, we're willing to discuss location
16 of depositions. And it may well be that for a lot of these
17 depositions that we're willing to take them in California
18 where Mr. Sheasby's office is, but what we don't want to
19 happen is we get into a situation where we have a lot of
20 depositions going on at the end of the case which typically
21 happens and we're on the East Coast and they're on the West
22 Coast and people, lawyers are shuttling back and forth.
23     All we're looking for is a default provision
24 that if the parties can't agree, it will be in Delaware
25 for the types of witnesses that are described there, but

Wednesday, September 7, 2005

SHEET 4

10

1 certainly we're going to discuss with them and try to agree
2 on locations for depositions.
3     THE COURT: Okay. Well, I don't see any reason
4 to depart from ordinary practice here so the ordinary
5 language in my orders will stand. And I do expect the
6 parties to discuss in good faith what makes sense under the
7 circumstances for any particular deponent. But if an
8 officer, director or managing agent is going to be deposed
9 and they want to insist on you folks coming here to do it,
10 all other things being equal, that's the way we'll play it.
11     Now, interrogatories. We're at again a split of
12 25 and 50. Are we talking about basically the same thing we
13 were dealing with with depositions or not?
14     MR. BLUMENFELD: Your Honor, Jack Blumenfeld.
15 It's a little bit that and there are a lot of issues here.
16 And interrogatories are not a particularly inexpensive or
17 not a particularly expensive way to get at contentions and
18 they have a lot of defenses here.
19     Again, we're not planning on abusing this but
20 there is actually a reason why I preferred to have it at 50,
21 and that is I've had recent cases -- none of them before
22 Your Honor. I've had three experiences where we put out a
23 set of interrogatories that we thought was about 15 long and
24 the other side got to about nine or 12 and said, well, the
25 way we count them, you're past 25 and we're not answering

11

1 any more. And I just don't think that is the type of issue
2 we should be dealing with in a large case and we're just
3 trying to avoid that. I'm hopeful that neither side is
4 going to abuse this but I think it's easier if we just have
5 50 and don't have to have issues like that before the Court.
6     THE COURT: Mr. Newcombe.
7     MR. NEWCOMBE: Yes, Your Honor. Again, this is
8 a matter of judgment. The rules provide for 25. We think
9 that is adequate. Interrogatories can be abusive and
10 abused. I'm not suggesting Mr. Blumenfeld would do that but
11 if you do them carefully and judicially, we thought 25 was
12 adequate. But, you know, can we sit here today and say that
13 is absolutely so, we wouldn't need more? It's hard to say
14 that is adequate. That is what the rules provide.
15 AmberWave wants 50. It's your call.
16     THE COURT: These types of cases are typically
17 complicated. Even if there is one patent involved, it's my
18 experience that the issues sometimes get a little complex so
19 I don't think this is, you know, your run-of-the-mill civil
20 action and so 50 does not seem out of the ballpark to me.
21 And I'll go ahead and allow there to be 50 interrogatories.
22     The discovery cutoff you folks have agreed on is
23 fine with me at July 14, 2006.
24     Turning over to paragraph 7, the status report,
25 we'll have the interim status report due on May 30, 2006.

12

1 And that means I'm going to need to have a status conference
2 with you the following week, June 6th, 2006 at 4:30 p.m.
3     So those are the dates for paragraphs 7 and 8.
4 The status report on May 30th, the status conference at 4:30
5 p.m. on June 6th.
6     Turning over to paragraph 9, I'm happy to have
7 you folks take me to school with a tutorial but I need to
8 shift the date on you. February 10, 2006 at 9:30 a.m. is
9 when we could make that work.
10     Paragraph 10, your case dispositive motion
11 deadline and briefing suggestion is all right with me.
12     Paragraph 11, the July 21, 2006 date is fine.
13 As is the August 14, 2006 date; and the other two dates in
14 there, September 8th and October 6th.
15     We'll have the hearing on claim construction at
16 2:00 p.m. on October 27, 2006.
17     Now looking down to paragraph 15, pretrial
18 conference, we'll schedule that for February 22nd, 2007 at
19 4:30 p.m., which means I'll need your form of pretrial order
20 on January 22nd, 2007.
21     Down to paragraph 18. The parties apparently
22 agree it's going to take a couple weeks to try this and you
23 are correct that that means 22 hours per side. We can and
24 will set this down for a trial between the dates of
25 March 19th and 30, 2007.

13

1     All right. Are there any questions about the
2 scheduling order and the changes that we've just discussed?
3 Mr. Newcombe?
4     MR. NEWCOMBE: No, Your Honor. Thank you.
5     THE COURT: Mr. Blumenfeld?
6     MR. BLUMENFELD: No, Your Honor. We'll redo
7 this and get something submitted within a few days.
8     THE COURT: Okay. Is there anything else we
9 need to discuss while we're all on the line together from
10 the plaintiff's perspective?
11     MR. NEWCOMBE: No, Your Honor.
12     THE COURT: Okay. From the defendant's
13 perspective?
14     MR. BLUMENFELD: No, Your Honor.
15     THE COURT: Okay. Appreciate your time.
16 Good-bye.
17     (The attorneys respond, "Thank you, Your
18 Honor.")
19     (Telephone conference ends at 4:22 p.m.)

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan