UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| AMBERWAVE SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION,<br><br>    Defendant. | §§§§§§§§§§§§§§ Civil Action No. 2-05CV-321-LED<br><br>Jury |

**PLAINTIFF AMBERWAVE SYSTEMS CORPORATION'S SUR-REPLY IN OPPOSITION TO DEFENDANT INTEL CORPORATION'S MOTION TO TRANSFER**

Case 2:05-cv-00321-LED Document 36 Filed 10/25/2005 Page 1 of 8

1392301

I.   **THERE IS NO SUBSTANTIAL OVERLAP BETWEEN THE DELAWARE AND TEXAS ACTIONS**

In two briefs totaling 19 pages, Intel does not cite a single decision that has ever applied the first-to-file rule to suits involving patents that are from different families and that claim different technologies—the situation here. While Intel nevertheless argues that the issues arising from the '632 and '292 patents "substantially overlap"—and that AmberWave "concedes" all of the "critical facts" supporting transfer—nothing could be further from the truth.

A.   **The Technology at Issue in the Delaware and Texas Actions is Distinct**

Intel does not, and cannot, provide any support for its claim that the '632 and '292 patents "involve the same underlying technology." (Def. Reply at 1.) These two patents have different specifications, parent applications, filing dates, inventors, prosecution histories, and claims. More importantly, they relate to distinct technologies. The '632 patent teaches electrical engineers how to construct circuits using strained-silicon transistors. The '292 patent guides materials scientists through the process of controlling the presence of performance-sapping impurities in semiconductor material. While both patents arise in the field of strained semiconductor fabrication, the similarities end there.

Because the patents cover different technologies, Intel's claim that the Delaware and Texas cases involve "identical acts of infringement" is simply untrue. (Def. Reply at 2.) The '292 and '632 patents cover different elements of Intel's fabrication process and thus involve different acts of infringement. Accordingly, Intel's claim notwithstanding, the Delaware and Texas courts will not be required to learn the same "technologies of Intel's complex microprocessors." (*Id*.) Each court need only address the specific technology at issue in its case.

B.   **The '632 and '292 Patents Have Different Claims and Different Prior Art**

The '632 patent has 16 claims. The '292 patent has 62 claims. Intel makes no argument that any of these claims overlap—"substantially" or otherwise. Instead, Intel points to two particular terms used in certain claims of both patents—"substrate" and "strained layer." Yet Intel makes no effort to argue that these two terms create any commonalties in the scope of the

'632 and '292 patents. Moreover, these terms are hardly unique to the '632 and '292 patents. A search on the United States Patent and Trademark Office website identifies 373 patents issued since 1976 that include the word "semiconductor" in their abstract and use the phrases "strained layer" and "substrate" in their specifications. (Supplemental Sheasby Decl., Ex. 1.)

Nor do the '632 and '292 patents have any meaningful overlap in prior art. The '632 patent cites 354 prior art references. The '292 patent cites 53 prior art references. From among these 407 prior art references, Intel identifies a total of 6 references common to both patents. (Def. Reply at 2 n.1.) Intel makes no effort to argue that any of these 6 references creates any common issues of validity with respect to the two patents.

C.   **The Damages Analysis Will Be Separate in Each Action**

Intel is wrong to suggest that "all of the issues relating to damages will overlap *completely* in both cases." (Def. Reply at 2, emphasis in original.) A standard measure of damages in a patent infringement case is a reasonable royalty. To establish a reasonable royalty, the trier of fact assesses the value a licensee would place on the patented technology in a hypothetical negotiation. *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Thus, the trier of fact must independently assess the value that the patented technology adds to the final product and whether there are non-infringing alternative technologies. *Id.* at 1312. Because the '632 and '292 patents cover different technologies and implicate different features in Intel's microprocessors, the trier of fact will need to consider the separate and distinct contributions of the infringing features to the overall product when determining the reasonable royalty that a licensee would pay for each patent.

D.   **Coordination of Discovery Efforts Can Avoid Any Duplication or Conflict**

While Intel raises the specter of overlapping discovery and inconsistent discovery rules (Def. Reply at 3), Intel offers no reason that the Delaware and Texas cases cannot coordinate discovery. Indeed, AmberWave agrees that production of discovery in one case obviates the need for production of the same discovery in the other case. *See Cummins-Allison Corp. v. Glory Ltd.*, Case No. 2-03-CV-358TJ, 2004 WL 1635534, at *3 (E.D. Tex. May 26, 2004)

(denying motion to transfer, court observed that "any discovery gathered from the Illinois case presumably will preclude the need for any duplicative discovery in this case"). Nor does Intel offer any reason that the parties and the courts will be unable to devise common sense solutions to any potential conflicts in discovery obligations between the cases.

## II. THIS COURT NEED NOT DEFER TO INTEL'S ANTICIPATORY AND TACTICALLY-MOTIVATED DELAWARE ACTION

Separate and apart from the foregoing, there is another reason that the Court should deny Intel's transfer motion: Intel plainly filed the Delaware action as a tactical maneuver in the midst of the parties' licensing negotiations. At the time that Intel filed the Delaware lawsuit, the parties were not at an impasse. To the contrary, in a cover letter that accompanied a courtesy copy of the complaint, Intel confirmed that negotiations were ongoing and that it had filed the lawsuit solely to "protect its rights." (Sheasby Decl., Docket No. 24, Ex. F.) In these circumstances—where the declaratory judgment action was filed to gain leverage during the parties' licensing discussions—this Court need not defer to the Delaware action.

Indeed, under almost identical facts, the Federal Circuit in *EMC Corp. v. Norand Corp.* affirmed a district court's conclusion that a declaratory judgment suit was filed for an improper tactical purpose and therefore should be dismissed. 89 F.3d 807 (Fed. Cir. 1996). In that case, EMC filed a declaratory judgment suit while licensing negotiations were ongoing, explaining to Norand that the suit was filed to "protect" EMC and that the company still desired to "continue discussions." *Id.* at 809. The Federal Circuit concluded that allowing EMC to control the forum of the dispute through anticipatory litigation would "reward—and indeed abet—conduct which is inconsistent" with public policy. *Id.* at 814 (quotation marks omitted). The Federal Circuit found that "the district court could properly view the declaratory judgment complaint as a tactical measure filed in order to improve EMC's posture in the ongoing negotiations—not a purpose that the Declaratory Judgment Act was designed to serve." *Id.* at 815. Intel suggests that *EMC* is off-point because it involved "evidence" that the infringer used the declaratory judgment suit as "leverage in licensing negotiations." (Def. Reply at 6, 7.) Of course, the only

1392301                                    - 3 -

"evidence" cited in *EMC* was the infringer's statements that it brought suit as a "defensive step" but would "like to continue" negotiations—statements identical in substance to those made by Intel. 89 F.3d at 815.

Intel maintains that, under the first-to-file rule, this Court *must* defer to the Delaware action unless this Court finds *additional* special circumstances justifying the denial of its transfer motion (such as the convenience of the forum), even if the Delaware action was tactically motivated to obtain leverage during the parties' licensing negotiations. (Def. Reply at 5, 6.) Not so. The *EMC* panel specifically considered whether the district court erred in dismissing the declaratory judgment action without finding any other "special circumstances," such as whether the suit was "filed in an inconvenient forum." *Id.* at 814. Judge Bryson concluded that the absence of other "special circumstances" was irrelevant, noting that "[w]e detect no such implied restriction on the scope of the district court's discretion." *Id.*[1]

Intel is a company with $34 billion in revenue last year. AmberWave is a twenty-person engineering firm that has never been involved in patent litigation. Intel's filing of a declaratory judgment action during the parties' ongoing negotiations had only one purpose—to intimidate AmberWave and to create "leverage" during the parties' negotiations. As this purpose is fundamentally at odds with the underlying goals of the Declaratory Judgment Act, this Court need not defer to Intel's anticipatory Delaware suit.

---

[1] Intel gains no support from its reliance on *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed. Cir. 1993), *Serco Services Co. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995), and *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005). Those cases did not involve ongoing negotiations at the time that the infringer filed its declaratory judgment action. 998 F.2d at 937; 51 F.3d at 1038; 394 F.3d at 1344. It is that unique factual setting—also present here—that resulted in the *EMC* court's decision. Indeed, as recognized in *Electronics for Imaging*, the overriding question is whether it would be "'unjust or inefficient' to permit a first-filed action to proceed to judgment …." 394 F.3d at 1348. While it is true that *merely* filing a declaratory judgment action in "anticipation" of an infringement action is not enough for a district court to decline to exercise jurisdiction under the Declaratory Judgment Act, *id.* at 1347-48, *EMC* recognizes that filing a declaratory judgment action to obtain leverage during ongoing licensing negotiations provides the additional element justifying a district court's decision to decline jurisdiction. *EMC*, 89 F.3d at 815.

III.    **TEXAS IS A MORE CONVENIENT FORUM THAN DELAWARE FOR INTEL TO LITIGATE**

Although Intel's motion is based solely on the first-to-file rule, and is not based on the traditional convenience factors applied under 28 U.S.C. § 1404(a), it is worth noting that convenience favors Texas over Delaware, particularly for Intel. Intel is headquartered in California and its manufacturing and development facilities for the accused products are located on the West Coast. (Sheasby Decl., Docket No. 24, Exs. K, L.) Texas is thus more convenient for the vast majority of Intel's witnesses. In contrast, Delaware is not a particularly convenient forum for either Intel or AmberWave:

- Neither Intel nor AmberWave has any facilities in Delaware.

- Intel fails to identify any witnesses for whom Delaware is especially convenient.

- Intel admitted during a recent scheduling conference that Delaware is not a convenient location for its employees to appear for depositions.[2] (Sheasby Decl., Ex. J.)

Moreover, Intel has a strong connection to Texas in general, and the Eastern District in specific:

- Intel has at least 600 employees in the state of Texas. (Intel Answer, Docket No. 16, ¶ 7.)

- Intel sells accused products in the Eastern District. (Intel Answer, ¶ 5.)

- Intel has at least two authorized distributors for its products in the Eastern District. (Sheasby Decl., ¶¶ 8-10.)

- Intel has initiated its own litigation in this District. (Intel Answer, ¶ 6.)

---

[2] Contrary to Intel's suggestion, AmberWave did not argue during the scheduling conference that Delaware is a convenient forum for its witnesses. Instead, AmberWave simply noted that there are efficiency benefits to using Judge Jordan's default rule of conducting party-witness depositions in Delaware, in the event of a disagreement between the parties over the location of a deposition. (Supplemental Jones Decl., Docket No. 26, Exhibit A, 10:3-10.)

1392301                                   - 5 -

Intel will suffer no detriment by litigating in this District.  It has done so before on numerous occasions and can identify nothing about those experiences to suggest any reason (let alone a compelling reason) to trump AmerWave's choice of this forum.  Shifting this litigation to Delaware will only serve to inconvenience Intel's witnesses, and place an additional burden on AmberWave, who will not be able to avail itself of this District's Patent Local Rules and mandatory disclosure requirements.

## IV.    CONCLUSION

Intel has failed to demonstrate any meaningful overlap in the analysis of claim construction, validity, infringement, and damages relating to the '292 and '632 patents.  The first-to-file rule thus has no application to this case.  Yet even if it did, Intel cannot invoke its benefits, having filed an anticipatory suit in a forum that is less convenient for itself.  Intel's transfer motion is neither principled nor well-founded.  It should be denied.

          Respectfully submitted,

          By: /s/ Morgan Chu (by permission D. Gindler)
          Morgan Chu (CA #70446)
          Attorney-in-Charge
          David I. Gindler (CA #117824)
          IRELL & MANELLA LLP
          1800 Avenue of the Stars, Suite 900
          Los Angeles, California 90067-4276
          Phone: (310) 277-1010
          Facsimile: (310) 203-7199
          E-mail: mchu@irell.com

          S. Calvin Capshaw III (TX #03783900)
          BROWN MCCARROLL LLP
          1127 Judson Road, Suite 220, P.O. Box 3999
          Longview, Texas  75601-5157
          Phone: (903) 236-9800
          Facsimile: (903) 236-8787
          E-mail: CCapshaw@mailbmc.com

Otis W. Carroll (TX #03895700)
IRELAND, CARROLL & KELLY, PC
6101 South Broadway Avenue
Suite 500
P.O. Box 7879
Tyler, Texas 75711
Phone: (903) 561-1600
Facsimile: (903) 581-1070

Franklin Jones, Jr. (TX #00000055)
JONES & JONES, INC., PC
201 W. Houston Street
P.O. Drawer 1249
Marshall, Texas 75671-1249
Phone: (903) 938-4395
Facsimile: (903) 938-3360

Samuel F. Baxter (TX #01938000)
MCKOOL SMITH, PC
300 Crescent Court
Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Facsimile: (214) 978-4044

T. John Ward, Jr. (TX #00794818)
LAW OFFICE OF T. JOHN WARD, JR., PC
P.O. Box 1231
Longview, Texas 75606-1231
Phone: (903) 757-6400
Facsimile: (903) 757-2323